1
2
3
4

Nathan Brown (SBN 033482)
BROWN PATENT LAW
15100 N 78th Way, Suite 203
Scottsdale, AZ 85260
Phone: 602-529-3474
Email: Nathan.Brown@BrownPatentLaw.com

5

6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

7

8

9

10

11

12

13

14

15

| | |
|---|---|
| **Darren MacDonald,** individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| *v.* | **DEMAND FOR JURY TRIAL** |
| **Travel Club Enterprises LLC**, a Delaware registered company, | |
| *Defendant.* | |

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Darren MacDonald ("MacDonald" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Travel Club Enterprises LLC d/b/a Club Travelo ("Club Travelo" or "Defendant") to stop Club Travelo from violating the Telephone Consumer Protection Act ("TCPA") by places unsolicited calls to consumers without their consent, including calls to consumers registered on the National Do Not Call Registry (DNC), and who asked the Defendant to stop calling them, and to otherwise obtain injunctive and monetary relief for all persons injured by Club Travelo's conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to

himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.      Plaintiff MacDonald is a Scottsdale, Arizona resident.

2.      Defendant Club Travelo is a Delaware registered company headquartered in Scottsdale, Arizona. Club Travelo conducts business throughout this District and the United States.

## JURISDICTION AND VENUE

3.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

4.      This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and does business in this District.

## INTRODUCTION

5.      As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have

1    been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S.

2    LEXIS 3544, at *5 (U.S. July 6, 2020).

3      6.   When Congress enacted the TCPA in 1991, it found that telemarketers called

4

5    more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

6      7.   By 2003, due to more powerful autodialing technology, telemarketers were

7    calling 104 million Americans every day. In re Rules and Regulations Implementing the

8    TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9      8.   The problems Congress identified when it enacted the TCPA have only

10

11    grown exponentially in recent years.

12      9.   According to online robocall tracking service "YouMail," 4.3 billion

13    robocalls were placed in January 2024 alone, at a rate of 137.9 million per day.

14    www.robocallindex.com (last visited February 25, 2024).

15

16      10.   The FCC also has received an increasing number of complaints about

17    unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and

18    232,000 complaints in 2018. FCC, Consumer Complaint Data

19    Center, www.fcc.gov/consumer-help-center-data.

20

21      11.   "Robocalls and telemarketing calls are currently the number one source of

22    consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016),

23    statement of FCC chairman.[1]

24

25

26

27    [1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

CLASS ACTION COMPLAINT

28    -3-

12.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

13.     Travel Club Enterprises LLC operates using the d/b/a Club Travelo:



## Terms & Conditions

Welcome to Travel Club Enterprises LLC, doing business as Club Travelo ("we," "our," or "us"). These Terms and Conditions ("Terms") govern your use of our website and services. By accessing or using our website, you agree to comply with and be bound by these Terms. If you do not agree to these Terms, please do not use our website or services. [3]

14.     Defendant Club Travelo is a travel agency that sells discounted travel packages to consumers.[4]

15.     Club Travelo makes telemarketing calls to solicit its vacation packages to consumers.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://club.staunchlabz.com/terms-and-conditions/
[4] https://www.clubtravelo.com/

16.    Club Travelo makes telemarketing calls to residential telephone consumers whose numbers are registered on the DNC, who have never provided their phone number to Defendant, and who never consented to receive phone calls from the Defendant.

17.    To make matters worse, Club Travelo continues to place calls to consumers who asked for the Defendant to stop calling them.

18.    Consumers have posted complaints online regarding unsolicited telemarketing calls that they received from Defendant Club Travelo, including complaints from consumers who were not able to get Club Travelo to stop calling them, including:

- "This company, or one of it's advertisers, has ***repeatedly called my cellphone which is on the Federal Do Not Call list, even though it's been told to stop***. I recently attempted to resolve the matter, but the company has failed to take any responsibility for the matter. At this point, I need to speak to the company's ATTORNEY or LEGAL REPRSENTATION to resolve the issue. If that does not happen, I will be forwarding this matter to an attorney for significant legal action."[5] (emphasis added)
- "TRAVELO solicited ** by phone to attend a seminar in downtown **********regarding discounted travel..."[6]

19.    In response to these call solicitations, Plaintiff files this class action lawsuit seeking injunctive relief, requiring Defendant to cease from sending placing unsolicited calls to consumers' cellular telephone numbers, and otherwise calling consumers registered on the DNC, as well as an award of statutory damages to the members of the Class.

---

[5] https://www.bbb.org/us/nv/las-vegas/profile/travel-club/club-travelo-1086-90086084/complaints
[6] Id.

1

**PLAINTIFF'S ALLEGATIONS**

2      20.    Plaintiff MacDonald registered his cell phone number on the DNC on August

3  27, 2003.

4
        21.    Plaintiff MacDonald is the subscriber and sole user of the cell phone number
5
   ending with 5850.
6
        22.    Plaintiff MacDonald uses his cell phone number for personal use only as one
7
8  would use a landline telephone number in a home, to resolve household issues and to

9  communicate with family and friends.

10
        23.    Plaintiff MacDonald's cell phone is not associated with a business.
11
        24.    Plaintiff MacDonald pays for his cell phone personally. It is not paid for by
12

13  a business.

14
        25.    The calls that Plaintiff MacDonald received from Defendant Club Travelo
15
16  were all received more than 31 days after Plaintiff registered his cell phone number on the

17  DNC.

18      26.    On January 8, 2024 at 8:43 AM, Plaintiff MacDonald received an unsolicited

19
20  cold call to his cell phone number registered on the DNC from the Defendant from the

21  phone number 480-914-4567.

22      27.    When the Plaintiff answered this call, an employee began their sales pitch

23  related to a travel deal.

24
        28.    Plaintiff MacDonald was told that in exchange for attending a presentation,
25
26  he would receive a free vacation package.

27
28

29.     Plaintiff MacDonald played along in order to confirm the name of the company that  made this call to his phone number despite the fact that it is registered on the DNC.

30.     Plaintiff MacDonald was transferred to an employee named Alex who said that he was the manager at Travelo Club.

31.     Alex from Travelo Club explained that the presentation would be a solicitation for a membership program.

32.     Alex also provided Club Travelo's address in Scottsdale, Arizona when Plaintiff asked where the presentation would be held.

33.     Alex did not know Plaintiff's name or any of Plaintiff's contact information, further evidencing the fact that this was a pure cold call to the Plaintiff.

34.     Plaintiff MacDonald provided contact details and confirmed a date/time for the sales presentation so that he could receive an email from Club Travelo documenting their cold calling practice.

35.     Alex told Plaintiff MacDonald that a manager would call Plaintiff back to confirm the date/time of the presentation within a few minutes.

36.     A few minutes later, on January 8, 2024 at 9:05 AM, Plaintiff MacDonald received a call from a Club Travelo's manager Jackie Martinez, from the phone number 480-914-4567, the same phone number that the Defendant first placed a call to the Plaintiff with.

37.     Martinez confirmed the travel details and then sent an email to Plaintiff

1   MacDonald with an attachment detailing what the presentation would entail.[7]

2       38.    Plaintiff MacDonald received a text message from the Defendant at 10:25

3   PM on January 8, 2024, from 602-932-7733 confirming the scheduled presentation:



      39.    Plaintiff MacDonald did not attend the presentation.

      40.    On January 9, 2024 at 8:37 AM, Plaintiff sent a text message to Club Travelo,

   at 602-932-7733, opting-out from receiving additional calls/text messages:

---

[7] https://www.dropbox.com/scl/fi/rsu3f2jxiow08zyhcucpv/VISITORS-PASS-SCOTTSDALE-CLUB-TRAVELO-Mr.-Bill-Mrs.Grace-Johnson.docx?rlkey=gbrq92ygb9w3ly71kg5daqx8z&dl=0



41.    In immediate response to the above text, Plaintiff MacDonald received a confirmation text message from 602-932-7733 thanking him for his response:



42.    Despite his opt-out request, on January 9, 2024 at 7:51 PM, Plaintiff received a solicitation text message from Club Travelo, from 602-932-7733 asking him to reschedule the sales presentation:



43.    On February 22, 2024 at 6:35 PM, Plaintiff MacDonald received a call from the Defendant to his cell phone number, from 602-806-7290. This call was made more than 44 days after the Plaintiff texted the Defendant "Please place me on your Do Not Call list."

44.    When Plaintiff answered this call, an employee asked if Plaintiff was still interested in attending a 1-hour presentation to learn more about the travel agency.

45.    Plaintiff MacDonald asked which company was calling him and he was told that the call was being made by Club Travelo. This employee also confirmed the address of Club Travelo when asked.

46.    Plaintiff told the employee, "I responded and told you guys not to contact me anymore."

47.    In response, the employee told Plaintiff that there was no note indicating his opt-out request and the call ended.

48.     Plaintiff MacDonald has never consented to receive calls or text messages from Club Travelo.

49.     In fact, prior to the unsolicited call on January 8, 2024, Plaintiff had never even heard of Club Travelo.

50.     The unauthorized telephone call and texts placed by Defendant, as alleged herein, have harmed Plaintiff MacDonald in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

51.     Seeking redress for these injuries, MacDonald, on behalf of himself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibit unsolicited calls and text messages to telephone numbers registered on the DNC, including calls/texts that were sent after the consumer opted-out from receiving additional calls/texts.

## CLASS ALLEGATIONS

52.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Classes:

**Do Not Call Registry Class**: All persons in the United States who from four years prior to the filing of this action (1) Defendant (or an agent acting on behalf of Defendant) called and/or texted more than one time within any 12 month period, (2) on the person's residential telephone number, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason

Defendant called and/or texted Plaintiff.

**Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant called and/or texted more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the Defendant's records reflect the person requested that they stop calling/texting.

53.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

54.    **Numerosity**: On information and belief, there are hundreds, if not thousands, of members of the Classes such that joinder of all members is impracticable.

55.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not necessarily limited to the following:

(a) whether Defendant systematically placed calls and/or sent text messages to Plaintiff and consumers whose telephone numbers were registered with

the National Do Not Call registry;

(b) whether the calls and text messages constitute telemarketing;

(c) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether Defendant's conduct constitutes a violation of the TCPA;

(e) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

56.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

57.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the

complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff MacDonald and the Do Not Call Registry Class)**

58.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

59.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government."

60.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[8]

61.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said

---

[8] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf (last visited Sept. 16, 2022).

regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c)(5).

62.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, phone call and/or text message solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

63.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one phone call and/or text message in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $1,500 in damages for such violations of 47 C.F.R. § 64.1200.

**<u>SECOND CAUSE OF ACTION</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff MacDonald and the Internal Do Not Call Class)**

64.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

65.    Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted

must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

66.    Defendant placed calls and/or text messages to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called/texted by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/text messages.

67.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

68.    Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a)  An order certifying the Classes as defined above; appointing Plaintiff as the

representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of money damages to be paid into a common fund for the benefit of Plaintiff and the Class;

c) An order declaring that Defendant's actions, as set out above, violated the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calls and texting activity and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff requests a jury trial.

Respectfully Submitted,

**DARREN MACDONALD**, individually and on behalf of all other similarly situated individuals.

Dated: March 3, 2024.

By: /s/ Nathan Brown
Nathan Brown (SBN 033482)
BROWN PATENT LAW
15100 N 78th Way, Suite 203
Scottsdale, AZ 85260
Phone: 602-529-3474
Email: Nathan.Brown@BrownPatentLaw.com

Avi R. Kaufman*
KAUFMAN P.A.
kaufman@kaufmanpa.com
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133

CLASS ACTION COMPLAINT
-18-

Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

*\* Pro Hac Vice Motion Forthcoming*